Dana L. Sullivan
Oregon Bar No. 944834
**BUCHANAN ANGELI**
**SULLIVAN & FERRER LLP**
621 Southwest Morrison Street, Suite 1250
Portland, Oregon 97205
Telephone: 503.974.5015
Facsimile: 971.230.0337
Email: dana@basf.law

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Telephone: 713.352.1100
Facsimile: 713.352.3300
Emails: mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Telephone: 713.877.8788
Email: rburch@brucknerburch.com

*Attorneys for Caverly and*
*the Hourly Employees*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| JONATHAN CAVERLY, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METRO WEST AMBULANCE SERVICE, INC.,<br><br>Defendant. | Civil No. ________________<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);** |

**(2) Failure to Pay Wages (Washington Minimum Wage Act, RCW 49.46, *et seq.*);**

**(3) Willful Withholding of Earned Wages (Washington Wage Rebate Act RCW 49.52, *et seq.*); and**

**(4) Failure to Provide Compliant Meal and Rest Breaks (RCW 49.12, *et seq.*; WAC 296-126-092).**

**DEMAND FOR JURY TRIAL**

## SUMMARY

1. Jonathan Caverly (Caverly) brings this class and collective action to recover unpaid wages and other damages from Metro West Ambulance Service, Inc. (Metro West).

2. Metro West employed Caverly as one of its Hourly Employees (defined below).

3. Metro West pays Caverly and the other Hourly Employees by the hour.

4. But Metro West does not pay them for all hours worked.

5. Instead, Metro West automatically rounds Caverly's and the other Hourly Employees' clock in and clock out times to the nearest quarter hour for its own primary benefit and to the detriment of these employees (Metro West's "rounding policy").

6. And Metro West does not provide or make available a meaningful opportunity to take a *bona fide*, compliant 30-minute meal period, even on an on-duty basis, to Caverly and the other Hourly Employees (Metro West's "meal period policy").

7. Instead, Metro West requires Caverly and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts.

8. Due to the continuous and unpredictable nature of their work, including dispatch obligations and response requirements, Caverly and the other Hourly Employees are unable to take a 30-minute uninterrupted meal period or any meaningful respite from work duties.

9. Metro West likewise does not provide or make available *bona fide* rest periods for every four hours worked or major fraction thereof to Caverly and the other Hourly Employees (Metro West's "rest period policy")

10. Instead, Metro West requires Caverly and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or prevents them from having any meaningful opportunity to take rest periods, including by requiring continuous work, monitoring, and readiness to respond to calls, such that any purported "rest periods" are illusory.

11. Metro West's failure to provide Caverly and other Hourly Employees with compliant, *bona fide* meal and rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor & Industries (L&I) regulations.

12. Additionally, Metro West pays Caverly and the other Hourly Employees nondiscretionary bonuses that it excludes from their regular rates of pay for overtime purposes (Metro West's "bonus pay scheme").

13. Metro West's rounding policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by depriving Caverly and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

14. Metro West's rounding policy, meal period policy, rest period policy, and bonus pay scheme violate the Washington Minimum Wage Act (WMWA) by depriving Caverly and other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

15. Likewise, as a result of its rounding policy, meal period policy, rest period policy, and bonus pay scheme, Metro West willfully withholds earned wages from Caverly and other Hourly Employees in violation of the Washington Wage Rebate Act ("WWRA").

## JURISDICTION & VENUE

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18. This Court has general personal jurisdiction over Metro West because it is an Oregon corporation.

19. Venue is proper because Medtronic maintains its principal place of business in Hillsboro, Oregon, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

20. Metro West employed Caverly as an EMT from approximately June 2023 until June 2025.

21. Throughout his employment, Metro West classified Caverly as non-exempt and paid him by the hour.

22. Metro West subjected Caverly to rounding policy, meal period policy, rest period policy, and bonus pay scheme.

23. Caverly brings this class and collective action on behalf of himself and similarly situated Metro West employees.

//

//

//

24. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who Metro West employed under its rounding policy, meal period policy, rest period policy, and/or bonus pay scheme during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

25. Caverly seeks to represent a putative Washington class pursuant to FED. R. CIV. P. 23 defined as:

> **All hourly employees in Washington who Metro West employed under its rounding policy, meal period policy, rest period policy, and/or bonus pay scheme during the past 3 years through final resolution of this action (the "Washington Class Members").**

26. The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

27. Metro West is an Oregon corporation headquartered in Hillsboro, Oregon.

28. Metro West may be served through its registered agent: **JD Fuiten, 5475 NE Dawson Ck. Dr., Hillsboro, Oregon 97124**, or wherever he may be found.

## FLSA COVERAGE

29. At all relevant times, Metro West was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Metro West was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, Metro West was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective gear—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

32. At all relevant times, Metro West's annual gross volume of sales made or business done exceeded $1,000,000 per year.

33. At all relevant times, the Hourly Employees were Metro West's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

35. Metro West "has been a trusted provider of emergency medical services in the Pacific Northwest for over 70 years … [and] has grown into a family of 12 companies with more than 1,500 employees."[1]

36. To meet its business objectives, Metro West hires employees, like Caverly and the other Hourly Employees.

37. Metro West posts job openings and solicits applications for these positions, across its locations, through its website.[2]

38. Metro West classifies Caverly and the other Hourly Employees as non-exempt and pays them by the hour.

39. While exact job titles and locations may differ, Caverly and the other Hourly Employees are all subject to Metro West's same or similar policies—its rounding policy, meal period policy, rest period policy, and/or bonus pay scheme—for similar work.

40. For example, Metro West employed Caverly as an EMT in and around Pierce County, Washington from approximately June 2023 until June 2025.

41. Caverly's job duties included observing and assessing patients, administering appropriate medical care to patients, and transporting patients to the appropriate medical facilities in response to emergency 911 calls, as well as during interfacility transfers.

---

[1] https://www.metrowest.us.com/history/ (last visited March 30, 2026).
[2] https://www.metrowest.us.com/employment/#1768511398258-a236c19d-057c (last visited March 30, 2026).

42. Metro West expected and required Caverly and the other Hourly Employees to remain ready to respond to calls at all times.

43. Caverly and the other Hourly Employees were thus not able to leave their posts, disengage from work duties, or take uninterrupted meal or rest breaks during their shifts.

44. Metro West paid Caverly approximately $21.28 an hour.

45. Caverly reported his "on the clock" hours to Metro West through its timekeeping system.

46. Metro West's records reflect the hours Caverly worked each week "on the clock."

47. Throughout his employment, Caverly typically worked 2 to 4, 12 or 24-hour shifts each workweek (48 to 96 hours a workweek) "on the clock."

48. Likewise, the other Hourly Employees typically work approximately 48 to 96 hours a week, "on the clock."

49. And each pay period, Metro West pays and provides benefits to Caverly and the other Hourly Employees based on common systems and methods it selects and controls.

50. Metro West requires Caverly and its other Hourly Employees to abide by common work, time, pay, meal period, rest period, and overtime policies and procedures.

51. But Metro West does not pay Caverly and the other Hourly Employees for all their hours worked, including overtime hours.

52. Instead, Metro West imposes its rounding policy on Caverly and the other Hourly Employees.

53. Specifically, Metro West automatically rounds their recorded hours to the nearest quarter hour for its primary benefit and to the detriment of the Hourly Employees, which, over time, results in a net underpayment of wages to Hourly Employees.

54. Metro West prohibits Caverly and its other Hourly Employees from clocking in for their shifts more than 7.5 minutes before their start times and clocking out more than 7.5 minutes after their end times.

55. Metro West takes disciplinary action or threatens to do so if Caverly and the other Hourly Employees clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

56. Likewise, Metro West takes disciplinary action or threatens to do so if Caverly or other Hourly Employees clock in past their scheduled start time or clock out before their scheduled end time.

57. Metro West further requires and expects Caverly and its other Hourly Employees to perform their normal job duties immediately upon clocking in.

58. By enforcing these policies, Metro West ensures its rounding policy benefits Metro West to the detriment of Caverly and the other Hourly Employees, including by systematically preventing employees from capturing all compensable work time before and after scheduled shifts.

59. Additionally, Metro West requires these employees to continue performing their normal job duties throughout their shifts and does not provide them with *bona fide* meal periods and does not provide a meaningful opportunity to take a 30-minute uninterrupted meal period, even on a paid on-duty basis.

60. Likewise, these employees do not receive a second *bona fide* meal period when they work in excess of 11 hours in a workday.

61. Instead, Metro West requires Caverly and the other Hourly Employees to remain continuously engaged in compensable work duties throughout their shifts, for Metro West's benefit, including during purported meal periods, such that no bona fide meal period occurs and any purported on-duty meal period is functionally indistinguishable from regular working time.

62. Thus, Caverly and the other Hourly Employees routinely spend their entire shifts performing work for Metro West's—not their own—benefit; and they were not provided any meaningful opportunity for meal or rest breaks throughout their shifts.

63. Likewise, Metro West fails to provide Caverly and the other Hourly Employees with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof; nor were they provided any meaningful opportunity to obtain the equivalent rest contemplated by Washington law.

64. Rather, Metro West requires Caverly and the other Hourly Employees to work throughout their shifts, including during any so called "rest periods" and/or requires continuous work and readiness, such that Caverly and the other Hourly Employees do not receive intermittent or cumulative rest sufficient to satisfy Washington law.

65. Finally, Metro West subjects Caverly and the other Hourly Employees to its bonus pay scheme.

66. Specifically, Metro West agrees to pay and subsequently pays Caverly and the other Hourly Employees non-discretionary bonuses, including shift bonuses and differentials, based on its criteria.

67. But Metro West excludes these non-discretionary bonuses from Caverly's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks the bonuses are earned.

68. For example, during the pay period ending April 12, 2025, Metro West paid Caverly a "Bonus" of $55.76, as well as a shift differential for 13.5 hours, but did not include these non-discretionary payments in his regular rate of pay for overtime purposes:

| ***EARNINGS DETAIL *** | Pay Rate | Hours | Amount | Labor Code |
|---|---|---|---|---|
| Regular | 21.28 | 66.50 | 1,415.12 | AMEMT24 |
| Overtime | 31.92 | 102.25 | 3,263.82 | AMEMT24 |
| Regular | 31.57 | 13.50 | 426.20 | AMEMT12 |
| Bonus | 0.00 | 0.00 | 55.76 | AMEMT12 |

69. Thus, Metro West fails to pay Caverly and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

70. Under its rounding policy and bonus pay scheme, Metro West fails to pay and willfully withholds earned wages, including overtime wages, from Caverly and the other Hourly Employees, in violation of the FLSA, WMWA, and WWRA

71. Metro West fails to provide compliant meal and rest breaks to the Washington Class Members, in violation of the WIWA and related L&I regulations.

## Class and Collective Action Allegations

72. Caverly brings his claims on behalf of himself and the other Hourly Employees as a class and collective action.

73. Like Caverly, the other Hourly Employees are victimized by Metro West's rounding policy, meal period policy, rest period policy, and/or bonus pay scheme.

74. Other Hourly Employees worked with Caverly and indicated they were paid in the same or similar manner and performed similar work subject to Metro West's rounding policy, meal period policy, rest period policy, and/or bonus pay scheme.

75. Based on his experience, Caverly is aware Metro West's rounding policy, meal period policy, rest period policy, and/or bonus pay scheme were imposed on other Hourly Employees.

76. The putative class of Hourly Employees includes more than 40 members.

77. Thus, the putative class of Hourly Employees is so numerous that joinder of all class members in one lawsuit is not practicable.

78. The Hourly Employees are similarly situated in the most relevant respects.

79. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages, overtime wages, and compliant meal and rest periods.

80. The only relevant inquiry is whether the Hourly Employees were subject to Metro West's rounding policy, meal period policy, rest period policy, and/or bonus pay scheme.

81. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

82. Rather, Metro West's rounding policy, meal period policy, rest period policy, and/or bonus pay scheme render Caverly and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, overtime wages, and *bona fide* meal and rest periods.

83. Metro West's records reflect the number of hours the Hourly Employees worked each week "on the clock."

84. Metro West's records reflect that it automatically rounded the Hourly Employees' hours to the nearest quarter hour for its own primary benefit.

85. Metro West's records also reflect that it failed to provide compliant meal and/or rest breaks to the Hourly Employees.

86. Metro West's records further reflect it paid the Hourly Employees non-discretionary bonuses and shift differentials it excluded from their regular rates of pay for overtime purposes.

87. The wages owed to Caverly and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

88. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Metro West's records, and there is no detraction from the common nucleus of liability facts.

89. Therefore, the issue of damages does not preclude class or collective treatment.

90. Caverly's experiences are typical of the experiences of the other Hourly Employees.

91. Caverly has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

92. Caverly has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Washington law.

93. Caverly and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

94. Caverly retained counsel with significant experience litigating complex class and collective actions.

95. A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

96. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Metro West will reap the unjust benefits of violating federal and Washington law.

97. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

98. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Metro West.

99. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency as well as parity among the Hourly Employees' claims.

100. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

//

//

101. Among the common questions of law and fact are:

(a) Whether Metro West rounded the Hourly Employees' hours to the nearest quarter hour for its primary benefit;

(b) Whether Metro West engaged in a policy and practice of failing to provide compliant "meal periods" or "rest periods";

(c) Whether Metro West failed to provide its Hourly Employees with *bona fide* meal and/or rest periods in violation of the WIWA and related Washington L&I regulations;

(d) Whether Metro West paid the Hourly Employees non-discretionary bonuses that it failed to include in their regular rates of pay;

(e) Whether Metro West failed to pay its Hourly Employees overtime at rates of at least 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 40 in a week;

(f) Whether Metro West willfully withheld earned wages from its Hourly Employees;

(g) Whether Metro West's decision not to pay its Hourly Employees overtime wages at the required rate for all overtime hours worked was made in good faith;

(h) Whether Metro West's decision to withhold earned wages from its Hourly Employees was made in good faith; and

(i) Whether Metro West's violations were willful.

102. There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

103. This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

104. The similarly situated Hourly Employees are known to Metro West, are readily identifiable, and can be located through Metro West's business and personnel records.

**METRO WEST'S VIOLATIONS WERE WILLFUL**

105. Metro West knew it was subject to the FLSA's and WMWA's overtime provisions.

106. Metro West knew the FLSA and WMWA required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

107. Metro West knew it was subject to the WWRA.

108. Metro West knew the WWRA prohibited it from willfully withholding earned wages from employees, including the Hourly Employees.

109. Metro West knew each Hourly Employee worked more than 40 hours in at least one workweek during relevant period(s).

110. Metro West knew its Hourly Employees were hourly, non-exempt and entitled to overtime.

111. And Metro West knew that it paid the Hourly Employees non-discretionary bonuses, including shift bonuses and differentials.

112. And Metro West knew it was required to, but did not, include this compensation in their regular rates of pay for overtime purposes.

113. Metro West knew its Hourly Employees did not waive their meal periods.

114. Nonetheless, Metro West failed to provide its Hourly Employees with *bona fide*, duty-free meal and rest periods.

115. Metro West knew its Hourly Employees did not actually receive *bona fide* meal periods.

116. Metro West knew it was subject to the WIWA and the Washington L&I regulations that require it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

117. Further, Metro West knew that employees were not receiving bona fide meal periods, yet failed to take corrective action.

118. Metro West knew it was subject to the WIWA and the Washington L&I regulations that require it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 10-minute rest period for every 4 hours worked or major fraction thereof.

119. And Metro West knew that employees were not receiving bona fide rest periods, yet failed to take corrective action.

120. Metro West knowingly and intentionally implemented and maintained policies that it knew resulted in the underpayment of wages and the denial of legally compliant meal and rest periods in violation of the WIWA and the Washington L&I regulations.

121. Metro West knowingly, willfully, and/or in reckless disregard of applicable Washington law carried out employment policies that systematically deprived its Hourly Employees of *bona fide* meal and rest periods, earned wages, and premium overtime pay at the required rates.

**COUNT I**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVE)**

122. Caverly brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

123. Metro West violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

124. Metro West's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

125. Accordingly, Metro West owes Caverly and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

126. Because Metro West knew or showed reckless disregard for whether its meal deduction policy, rounding policy, and bonus pay scheme violated the FLSA, Metro West owes Caverly and the other Hourly Employees these wages for at least the past 3 years.

127. Metro West is also liable to Caverly and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

128. Finally, Caverly and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME UNDER THE WMWA
## (WASHINGTON CLASS)

129. Caverly brings his WMWA claim as a class action on behalf of himself and the other Hourly Employees pursuant to FED R. CIV. P. 23.

130. Metro West's conduct violates the WMWA. RCW 49.46, *et seq.*

131. At all relevant times, Metro West was subject to the WMWA because Metro West was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

132. At all relevant times, Metro West employed Caverly and the other Hourly Employees as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).

133. The WMWA requires employers, like Metro West, to pay non-exempt employees, including Caverly and the other Hourly Employees, overtime wages at rates not less than 1.5 times

their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.

134. Caverly and the other Hourly Employees are entitled to overtime pay under the WMWA.

135. Metro West violated, and is violating, the WMWA by failing to pay non-exempt employees (Caverly and the other Hourly Employees) overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* RCW 49.46.130; *see also* RCW 49.46.090.

136. Metro West's unlawful conduct harmed Caverly and the other Hourly Employees by depriving them of the overtime wages they are owed under Washington law.

137. Accordingly, Metro West owes Caverly and the other Hourly Employees the difference between the wages paid and the overtime wages earned (RCW 49.46.090) plus pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

138. Finally, Caverly and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## COUNT III
## WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
## (WASHINGTON CLASS)

139. Caverly brings his WWRA claim as a class action on behalf of himself and the other Hourly Employees pursuant to FED R. CIV. P. 23.

140. Metro West's conduct violates the WWRA. RCW 49.52, *et seq*.

141. At all relevant times, Metro West was subject to the WWRA because Metro West was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

142. At all relevant times, Metro West employed Caverly and the other Hourly Employees as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

143. The WWRA prohibits employers, like Metro West, from depriving employees, including Caverly and the other Hourly Employees, of "any part of his or her wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

144. Metro West violated, and is violating, the WWRA by willfully withholding earned wages from Caverly and the other Hourly Employees for the hours they worked during their on-duty "meal periods" and "rest periods," which Metro West was obligated to pay under Washington law. *See* RCW 49.52.050.

145. Metro West also violated, and is violating, the WWRA by willfully withholding earned overtime wages from Caverly and the other Hourly Employees, which Washington law obligated Metro West to pay at rates not less than 1.5 times their regular rates of pay. *See* RCW 49.52.050.

146. Metro West's unlawful conduct harmed Caverly and the other Hourly Employees by willfully withholding earned wages (including earned overtime wages at the required premium rate) from these employees, which they are owed under Washington law.

147. Accordingly, Metro West owes Caverly and the other Hourly Employees their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages (RCW 49.52.070).

148. Finally, Caverly and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

//

//

## COUNT IV
## FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA (WASHINGTON CLASS)

149. Caverly brings his meal and rest period claims under the WIWA and related L&I regulations as a class action on behalf of himself and the other Hourly Employees pursuant to FED R. CIV. P. 23.

150. Metro West's conduct violates the WIWA's (and the related L&I regulations') meal and rest period requirements. RCW 49.12, *et seq*.; WAC 296-126-092.

151. At all relevant times, Metro West was subject to the WIWA and related L&I regulations because Metro West was (and is) an "employer" within the meaning of the WIWA and the L&I regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

152. At all relevant times, Metro West employed Caverly and the other Hourly Employees as covered "employees" within the meaning of the WIWA and the Washington L&I regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

153. The WIWA prohibits employers, like Metro West, from employing employees, including Caverly and the other Hourly Employees, under conditions of labor detrimental to their health. RCW 49.12.020.

154. The L&I regulations require employers, like Metro West, to provide employees, including Caverly and the other Hourly Employees, meal periods of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift. WAC 296-126-092(1).

155. The L&I regulations further mandate that meal periods shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092(1).

156. The L&I regulations also require employers, like Metro West, to provide employees, including Caverly and the other Hourly Employees, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

157. The L&I regulations further prohibit employers, like Metro West, from requiring employees, including Caverly and the other Hourly Employees, to work more than 3 hours without a rest period. WAC 296-126-092(4).

158. Washington law guarantees employees both (a) the right to compensation for all time worked and (b) a separate right to a meaningful opportunity to take bona fide meal and rest periods, which is not satisfied merely by paying employees for time worked during such periods. *See*, *e.g.*, *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 517-19, 415 P.3d 224 (2018); *Pellino v. Brinks Inc.*, 164 Wn. App. 668, 690-93, 267 P.3d 383 (2011).

159. Throughout the relevant period, Metro West expected and required Caverly and the other Hourly Employees to remain on duty and perform compensable work throughout their shifts, including during their "meal and rest periods."

160. Caverly and the other Hourly Employees were not relieved of all duties during meal and rest periods but instead were subject to work interruptions.

161. Thus, Metro West violated, and is violating, the WIWA, WMWA, and related L&I regulations by failing to provide Caverly and the other Hourly Employees *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

162. Metro West's unlawful conduct harmed Caverly and the other Hourly Employees by depriving them of the *bona fide* meal and rest periods they are owed under Washington law.

163. Accordingly, Caverly and the Hourly Employees are entitled to recover all available damages under Washington law, including their unpaid wages for their missed meal and rest periods,

penalties in an amount not less than $25 nor more than $1,000 per violation (WAC 296-126-226; RCW 49.12.170), and pre-judgment interest at a rate of 12% per annum. RCW 19.52.020.

164. Finally, Caverly and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. RCW 49.12.150.

## JURY DEMAND

165. Caverly demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Caverly, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b) An Order certifying this lawsuit as a class action pursuant to FED R. CIV. P. 23.

(c) An Order appointing Caverly and his counsel to represent the interests of the Hourly Employees;

(d) An Order finding Metro West liable to Caverly and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

(e) An Order finding Metro West liable to Caverly and the other Hourly Employees for failing to provide them with *bona fide* meal and rest periods plus all available statutory penalties;

(f) An Order finding Metro West liable to Caverly and the other Hourly Employees for all unpaid overtime wages owed under the WMWA;

(g) An Order finding Metro West liable to Caverly and the other Hourly Employees

for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

(h) An Order awarding attorney's fees, costs, and expenses;

(i) A Judgment against Metro West awarding Caverly and the other Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

(j) An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(k) All such other and further relief as may be necessary and appropriate.

Dated: April 7, 2026

Respectfully submitted,

**BUCHANAN ANGELI SULLIVAN & FERRER LLP**

By: */s/ Dana L. Sullivan*
Dana L. Sullivan
Oregon Bar No. 944834
621 Southwest Morrison Street, Suite 1250
Portland, Oregon 97205
503.974.5015 – Telephone
971.230.0337 – Facsimile
dana@basf.law

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR CAVERLY & THE HOURLY EMPLOYEES**